**In the Matter of Pauline Brown WILES, Bankrupt.**

**No. 68–BK–52–D.**

United States District Court
W. D. Virginia,
Danville Division.

Dec. 16, 1968.

John Carter, Carter & Wilson, Danville Va., for bankrupt Wiles.

Joseph E. Blackburn, Richmond, Va., for Chesapeake and Potomac Telephone Co.

James Goodson, III, Danville, Va., Trustee in Bankruptcy.

William E. Land, Danville, Va., for Trustee.

Philip H. Hickson, Lynchburg, Va., Referee in Bankruptcy.

### OPINION and JUDGMENT

DALTON, Chief Judge.

By his order dated October 18, 1968, the Referee in Bankruptcy directed that the Chesapeake and Potomac Telephone Company, hereinafter referred to as C & P, turn over to the trustee of the bankrupt the separation pay which had accrued to the bankrupt as an employee of C & P. The bankrupt, Pauline Brown Wiles, claims the separation pay as her

post-bankruptcy estate, and has petitioned to this court for review of the Referee's order. The order of the Referee is based upon the following facts.

The bankrupt had been employed by C & P for more than fifteen years prior to her dismissal by C & P, during which time there had accrued for her benefit a "termination allowance" in the net amount of $1,819.73. This termination allowance arose under the following quoted provisions of a union contract between C & P and the bankrupt's union, Communications Workers of America:

Article 27—Termination Allowances

*Section 1.* Termination allowances in amounts computed in accordance with Section 3 of this Article will be paid to regular full-time employees having three (3) or more years of net credited service whose service is terminated by Company under any of the following conditions as determined by Company:

(a) Dismissed (except for misconduct)—employees having completed three (3) or more years of net credited service at the time of dismissal.

(b) Retired at the age of 65 without a pension.

*Section 2.* Termination allowances will not be paid to employees who are dismissed for misconduct, resign, or receive a Company pension or who otherwise leave the service under conditions not specified in Section 1 of this Article.

This termination allowance is computed according to a formula based upon the employee's length of service and job pay scale. Although the employee's dismissal for misconduct disentitles the employee to receive the termination allowance, dismissal of the employee by C & P for unsatisfactory performance, as in this case, does not extinguish the employee's right to the allowance.

The events which culminated in the dismissal of the bankrupt commenced in 1966, when she was given repeated notices that her services were unsatisfactory and warned that if her performance did not improve she would be dismissed. These warnings were unavailing and the bankrupt was suspended from work several times. In October, 1967, procedures for the final dismissal of the bankrupt were initiated by C & P. The bankrupt was placed on sick leave in November, 1967, and received sickness disability benefits until February 12, 1968. On that date the disability benefits were terminated and the bankrupt was placed on a ninety-day leave of absence without pay. Also on February 12, 1968, the bankrupt's work supervisors recommended her dismissal. The bankrupt was notified late in April, 1968, that her leave of absence would expire on May 11, 1968, and would not be extended unless she furnished information which would justify a different conclusion.

On February 26, 1968, the final decision to dismiss the bankrupt was made, and a check of $1,819.73 of termination allowance, payable to the bankrupt, was drawn and placed with the bankrupt's supervisor for delivery to the bankrupt when she was notified of her dismissal. When C & P received notice that the bankrupt had filed on March 11, 1968, a voluntary petition in bankruptcy, the check was recalled by C & P pending a judicial determination of the party entitled to the allowance. At the expiration of her leave of absence in May, 1968, the bankrupt returned to work, whereupon she was notified of her dismissal.

Upon these facts, which find substantial support in the record, the Referee concluded that the termination allowance became an asset of the bankruptcy estate under either or both subparagraphs (5) and (6) of § 70a of the Bankruptcy Act, 11 U.S.C. § 110a.

To the contrary the bankrupt argues that as of the filing date, March 11, 1968, her interest in the termination allowance was contingent, since according to the union contract or C & P procedures, she would not receive the allowance if on or before the expiration of her leave of absence she (1) resigned, (2) constructively resigned by failing to return to work, (3) died, or, (4) was

dismissed for cause by C & P. In arguing that such "contingent" rights do not pass to the trustee under § 70a the bankrupt relies on authority which holds, for example, that wages earned after bankruptcy or, under certain circumstances, rights of a beneficiary under an insurance policy do not pass to the trustee. See generally 4A Collier on Bankruptcy ¶ 70.15[2], at 143–4 (explanation of policy), 70.34 (future wages), 70.23[7] (insurance) (14th Ed. 1967). We agree with the Referee that the cases cited by the bankrupt are manifestly inapposite to the instant facts, and that the bankrupt's argument is unconvincing.

The pertinent provisions of § 70a are: The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act * * * to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * * (6) rights of action arising upon contracts * * *.

The requirements of § 70a(5) would be met in this case if the bankrupt's interest in the termination allowance at the time the petition was filed was "property" which she could have "transferred."

These issues require a construction of the union contract provisions regarding the termination allowance and the nature of the bankrupt's rights thereunder as of the filing date. According to the testimony of an officer of C & P, the termination allowance represents compensation in lieu of wages. The contract states plainly that the termination allowance "will be paid" to an employee "whose service is terminated by Company" by dismissal for reasons other than misconduct. The Referee found that the

final decision by C & P to dismiss the bankrupt was made on February 26, 1968, and that this decision was irrevocable. Immediately thereafter a check for the net amount of termination pay due the bankrupt was placed with her supervisor with directions to deliver it to the bankrupt upon her return to work and notification of her dismissal. These facts reveal that once the check was placed with the supervisor, it should have been delivered to the bankrupt upon demand any time prior to the expiration of her leave of absence.

■ It is argued that, under C & P procedure, if the bankrupt had failed to return to work prior to the expiration of her leave of absence, C & P would have considered this omission as, in effect, a resignation by the bankrupt which would forfeit her right to the termination allowance. This self-serving interpretation of the union contract by C & P is not justified by any provision contained therein. It is extremely doubtful that any court would condone such a practice, particularly since it was C & P's practice not to advise the employee of this consequence of his failure to return to work. Nevertheless, even assuming that this interpretation of the union contract is permissible, it is clear that the bankrupt's right to receive the termination allowance became vested when the final decision to dismiss her was made. Only her right to possession was postponed. The fact that she might have been divested of her rights upon the occurrence of conditions subsequent, which in fact never occurred, is irrelevant. At the date of filing the termination allowance was property within the meaning of 70a(5). As stated by the Supreme Court in Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L. Ed.2d 428 (1966):

The main thrust of 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its

reach because it is novel or contingent or because enjoyment must be postponed.

Examples of "property" include rights and interests subject to both conditions precedent and subsequent: an income tax loss-carryback refund claims, Segal v. Rochelle, supra; a contingent, postponed interest in a trust, Horton v. Moore, 110 F.2d 189 (6th Cir. 1940); see also In re Camden, 217 F.Supp. 634 (W.D.Va.1963); a limited interest in future profits of a joint venture, Kleinschmidt v. Schroeder, 94 F.2d 707 (9th Cir. 1938); a claim for increased wages to be granted retroactively, In re Evans, 253 F. 276 (W.D.Tenn.1918); a right to insurance renewal premiums, In re Liebowitt, 93 F.2d 333 (3rd Cir. 1937), cert. denied 303 U.S. 652, 58 S.Ct. 750, 82 L.Ed. 1113 (1938); and for a case "on all fours" regarding separation pay, see In re Durham, 272 F.Supp. 205 (S.D.Ill.1967).

As to whether the bankrupt's right to the termination allowance was transferable within the meaning of § 70a(5) and § 1(30) of the Bankruptcy Act, we look first to state law. See Segal v. Rochelle, supra, 382 U.S. at 381, n. 6, 86 S.Ct. 511. We have no doubt that under Virginia law the bankrupt's right was assignable as of the filing date. See 2 Michie's Jurisprudence, Assignments §§ 7, 13 (1948).

We also agree with the Referee's conclusion that even if C & P would not in any event have delivered the check for the termination allowance to the bankrupt prior to the expiration of her leave of absence, the least that the bankrupt would have possessed as of the filing date would have been a "right of action" passing to the trustee under both (5) and (6) of § 70a. See In re Durham, supra, 272 F.Supp. 205 (S.D.Ill.1967). This right of action would have been assignable under Virginia law. The bankrupt's rights under the union contract were clearly definable, the amount of termination allowance was liquidated, and the contract required no further performance on the part of the bank-

rupt. See In re Smith, 252 F.Supp. 73 (N.D.Iowa 1966), discussing the requirements of § 70a(6).

 Accordingly, the October 18, 1968 order of the Referee is in all respects affirmed, and the Chesapeake and Potomac Telephone Company of Virginia is hereby ordered to turn over to the trustee of the bankrupt the net amount of $1,819.73 for termination allowance accrued to the bankrupt and discharge all tax liability assessable on account of such payment.

The Clerk is directed to send a copy of this opinion and judgment to counsel of record and to the Referee.