Robert H. WALDSCHMIDT, Plaintiff,

v.

CBS, INC., Defendant.

No. 81–3074.

United States District Court,
M. D. Tennessee,
Nashville Division.

Sept. 25, 1981.

Robert H. Waldschmidt, Nashville, Tenn., pro se.

Jean Nelson and Val Sanford, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This action involves a dispute between the bankruptcy trustee for the estate of musician George Jones and the defendant CBS, Inc., concerning who is entitled to the royalties from the sale of certain records made by Mr. Jones pursuant to his recording contract with CBS. Because the recordings were made by Mr. Jones prior to the date of his voluntary bankruptcy petition, the trustee argues that any royalties derived from their sale are the property of Mr. Jones' estate and therefore should pass

to the trustee. CBS, on the other hand, argues that because the royalties actually stem from services rendered under a personal services contract—the recording contract between Mr. Jones and CBS—they are not the property of Mr. Jones' estate and do not pass to the trustee. CBS's argument is important because it also alleges that under the contract it is entitled to recoup from these royalties certain advances it made to Mr. Jones prior to his bankruptcy. CBS's fear is that if the royalties are deemed the property of the estate, its right of recoupment would dissipate and it would be forced to proceed as an ordinary creditor of Mr. Jones to recover the money it advanced to him. The advances far exceed the royalties collected to date, and if treated like any other creditor, CBS would be unable to recover the full amount of the advances.

Each party in this action has moved for summary judgment pursuant to Rule 56, F.R.Civ.P. Because no genuine issue regarding any material fact exists, this cause is ripe for summary judgment. Having reviewed the pertinent facts and law, this Court now makes the following determinations: (1) that the royalties are the property of Mr. Jones' estate; (2) that although the royalties are the property of the estate, CBS is entitled to recoup the full amount of the advances from these royalties; and (3) that the trustee is entitled to an accounting of the royalties and of the amounts recouped by CBS.

*The Royalties as Property of the Estate*

The threshold issue in this case is whether the royalties constitute "property" within the meaning of section 70(a)(5) of the old Bankruptcy Act.[1] That section provides in relevant part:

(a) The trustee of the estate of a bankrupt . . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located. . . .
(5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred. . . . [2]

CBS bases its argument that the royalties are not property within the scope of section 70(a)(5) on two grounds. First, CBS argues that because the recording contract between Mr. Jones and CBS was one for personal services, both the contract itself and any rights growing out of it—such as the right to royalties—were nontransferable and nonseverable as of the date of the bankruptcy petition, December 13, 1978. Second, CBS argues that even if Mr. Jones had transferable rights in the royalties in December 1978, royalty rights are not the type of property intended to be covered by section 70(a)(5). The trustee counters CBS's contentions by arguing that Mr. Jones had unquestionable rights in any royalties collected by CBS from sales of his records, that these rights were clearly alienable by Mr. Jones, and that "property" as meant by section 70(a)(5) includes the rights to the royalties here in dispute.

■ In regard to the first point of contention, this Court finds that nothing in the nature of the recording contract itself prevents the rights to the royalties from passing to the trustee. As CBS argues, it is generally true that a contract for personal

---

1. This dispute has grown out of proceedings in the United States Bankruptcy Court (M.D. Tenn.) that were initiated prior to the effective date of the new Bankruptcy Code. Bk. No. 78–31885.

2. The trustee also claims entitlement to the royalties by virtue of section 70(a)(6) of the Bankruptcy Act, which includes within the estate any "rights of action arising upon contracts" held by the bankrupt. The trustee is correct in asserting that section 70(a)(6) is relevant to this dispute. Before section 70(a)(6)

can apply, however, it must first be determined whether the royalties and any right to them held by Mr. Jones constitute property under section 70(a) that can pass to the trustee. Because this Court has determined that the royalties do pass to the trustee (*see* the discussion *infra*), the trustee will also assume the right to sue under section 70(a)(6) should CBS fail to remit any of the excess royalties to the trustee, presuming any excess royalties exist or may exist in the future.

services is "nonassignable." What this rule means, however, is simply that the performance of the particular personalized service itself is nondelegable, not that the right to payment for any such service may not be assigned once performance has occurred. *See* Corbin, Corbin on Contracts 805 (1952). This rule has, moreover, been consistently applied under the bankruptcy laws in cases involving personal services contracts. As one commentator has stated,

> Where the bankrupt had a contract right and it appears that a desire to deal with persons named in the contract only was in contemplation of the parties, the contract rights will not pass to the trustee.... If the personal service element is completed and there remains a mere right of the bankrupt to collect compensation, the contract right will pass to the trustee.

1 Cowans, Bankruptcy Law and Practice § 344 (2d ed. 1978). *See* 4A Collier on Bankruptcy § 70.22[3] (14th ed. 1979). *See also Florance v. Kresge*, 93 F.2d 784 (4th Cir. 1938); *In re Wright*, 157 F. 544 (2d Cir. 1907). CBS attempts to refute application of this rule to the facts of this case by arguing that Mr. Jones had not actually completed performance of his contract as of December 1978. CBS argues that Mr. Jones was still obligated under the contract to certain promotional activities, as well as live performances, before he was entitled to receive the royalties.

While it is true that Mr. Jones did have certain obligations outstanding under the overall contract with CBS, this Court cannot agree that Mr. Jones' right to the royalties was expressly conditioned on such additional activity. Mr. Jones completed performance of the basic contractual duties upon which the receipt of royalties was conditioned by making the master recordings from which the records were ultimately pressed. Mr. Jones did have other obligations under the contract, but these obligations did not affect his right to royalties from the record sales. If anything, Mr. Jones' further obligations seemed designed to boost records sales, and it is only in that respect that they affected the royalties. This Court rejects CBS's argument, then, and accepts the contention of the trustee that any contingency that did exist in Mr. Jones' contract regarding the royalties would at most affect the marketability of Mr. Jones' interest, but not its assignability. *See In re Malloy*, 2 B.R. 674 (Bkrtcy.M.D. Fla.1980).

■ Having concluded that the personal services nature of the recording contract does not preclude passage to the trustee of Mr. Jones' rights to the royalties, this Court must now decide whether these rights are in fact the sort of "property" intended to pass to the trustee under section 70(a)(5). Although the definition of property under section 70(a)(5) has been considered by the courts on numerous occasions, no case appears to have addressed this particular question directly. Despite the absence of a specific precedent, the voluminous case law that has evolved under section 70(a)(5) does provide guidelines for this Court's inquiry. Taking the existing interpretations into consideration, this Court concludes, in this case of apparent first impression, that the royalty rights here are property under section 70(a)(5) of the Bankruptcy Act.

■ It is well established that the term "property" as employed in section 70(a)(5) is to be given a broad interpretation. As the Supreme Court stated in *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 514, 15 L.Ed.2d 429, 432 (1966), in words that seem especially applicable to this case,

> The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end, the term "property" has been construed most generously and interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.

The simple fact that Mr. Jones could not actually collect the royalties until some time after the date of his bankruptcy petition, then, does not prevent his rights to those royalties—which effectively accrued before his bankruptcy—from being considered property under section 70(a)(5). *See In re*

*Wiles*, 295 F.Supp. 13 (W.D.Va.1968); *In re Durham*, 272 F.Supp. 205 (S.D.Ill.1967); *In re Dunn*, 5 B.R. 156 (Bkrtcy.N.D.Tex.1980). *Cf. Matter of Haynes*, 9 B.R. 418 (Bkrtcy.N.D.Ind.1981).

While "property" under section 70(a)(5) is thus broadly defined, its scope is not unlimited. As the Supreme Court noted in *Segal*,

> [L]imitations on the term do grow out of other purposes of the Act; one purpose . . . is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future.

382 U.S. at 379, 86 S.Ct. at 514, 15 L.Ed.2d at 432. Elaborating on this restriction, the Court in *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124, 127 (1970), stated,

> The most important consideration limiting the breadth of the definition of "property" lies in the basic purpose of the Bankruptcy Act to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act."

(citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934)). The test for determining whether the inclusion of certain items in the estate is consistent with the purpose and policy of the Bankruptcy Act is whether the bankrupt's claim to the asset is "sufficiently rooted in the prebankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)." *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428, 432 (1966). This Court believes that Mr. Jones' interest in the royalties meets this test and should be considered the property of his estate under section 70(a)(5).

Over the years the courts have applied the *Segal* test to a wide range of interests and have reached a variety of conclusions regarding what constitutes property within the scope of section 70(a)(5). For example, a general income tax refund is "property" even though it is paid subsequent to bankruptcy, *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), as is an insurance agent's right to renewal commissions. *In re Malloy*, 2 B.R. 674 (Bkrtcy.M.D.Fla.1980), because both interests are considered "sufficiently rooted in the pre-bankruptcy past." On the other hand, accrued but unpaid vacation pay is not "property," *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), nor is that portion of a tax refund attributable to an earned income credit, *In re Searles*, 445 F.Supp. 749 (D.Conn.1978), since both of these types of assets are deemed essential to the bankrupt's ability to make an "unencumbered fresh start" after bankruptcy.

In characterizing assets for the purposes of section 70(a)(5), the courts have developed no clear mode of classification. Indeed, the Supreme Court itself has stated that "property" as meant by section 70(a)(5) "has never been given a precise or universal definition." Moreover, "it is impossible to give any categorical definition to the word . . ., nor can we attach to it in certain relations the limitations which would be attached to it in others." *Kokoszka v. Belford*, 417 U.S. 642, 645, 94 S.Ct. 2431, 2433, 41 L.Ed.2d 374, 378–79 (1974). Rather than erecting hard and fast categories, then, the courts have taken a case-by-case approach and analyzed each asset on an individualized basis. Essentially, the courts have applied a balancing test to each specific situation, employing the *Segal* formula and weighing the degree of relation between the asset and the "prebankruptcy past" against the potential effect that placing the asset in the estate would have on the bankrupt's ability to make an "unencumbered fresh start" after bankruptcy.

Applying this balancing test to the facts of this case, this Court finds that Mr. Jones' rights to the royalty payments are indeed sufficiently rooted in the prebankruptcy

past to warrant inclusion of the royalties within Mr. Jones' estate. The recordings involved here, from which the royalties derive, were completed prior to the filing of the bankruptcy petition. Moreover, while Mr. Jones did have certain outstanding obligations under his contract with CBS, his right to payment was not so conditioned on his performance of these additional duties that the royalties should not be deemed property under section 70(a)(5). Moreover, including the royalties within the estate would not unduly handicap Mr. Jones' efforts to make an unencumbered fresh start because the royalties are in fact derived from recordings made prior to Mr. Jones' bankruptcy. As this Court is aware from other proceedings involving Mr. Jones, he has already devised a plan to repay his creditors and is presently once again engaged in recording and public appearances.

The conclusion of this Court is also supported by the position taken by the Sixth Circuit on the analogous issue of whether certain wages are includable within the bankrupt's estate. Ruling that "earned wages" are covered by section 70(a)(5), the court in In re Aveni, 458 F.2d 972 (6th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972), noted that a distinction has been made by the courts between regular and future wages. Future wages are not considered property within the scope of section 70(a)(5) because to include them would tremendously hinder the bankrupt's effort to make a fresh start. Id. at 973. See Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed. 2d 428 (1966). See also Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). On the other hand, wages attributable to services rendered prior to bankruptcy are "property." As the Sixth Circuit stated,

> Earned wages ... are far different from future wages. Earned wages are normally payable at a fixed time following the rendering of services by an employee, and

the occurrence of bankruptcy does not alter the maturity of the employer's obligation to pay. . . .

> The Bankruptcy Act is designed to give the bankrupt a fresh start to begin anew, but this concept should not be judicially expanded to include "property" which would otherwise vest in the trustee.

458 F.2d at 973–74.

Although the royalty payments owed to Mr. Jones were not due in toto on any one specific date, the arrangement between Mr. Jones and CBS did require a regularized system of accounting and payment to Mr. Jones at six-month intervals. Moreover, nothing in the fact of Mr. Jones' bankruptcy has (or had) any effect at all upon CBS's obligation to pay the royalties. That obligation matured upon the completion of the recordings by Mr. Jones, and nothing has since occurred to alter it. While the example of wages is not a perfect analogy—for there is no perfect analogy to this case—the reasoning of the Sixth Circuit in this respect is persuasive. Coupled with this Court's previous conclusion that any impediment to Mr. Jones' ability to start anew is far outweighed by the prebankruptcy nature of the royalties' roots, Aveni provides ample basis for including the royalties within the estate.

This Court thus rules that the royalties owed by CBS, Inc., to George Jones because of recordings made by Mr. Jones prior to the date of his bankruptcy petition are property within the scope of section 70(a)(5) of the Bankruptcy Act and pass to the trustee for the benefit of the estate. The argument of CBS is accordingly rejected.

### CBS's Right of Recoupment

■ Although this Court has ruled that the royalties are the property of the estate under section 70(a)(5), this Court also holds that CBS is entitled to recoup the full amount of its advances to Mr. Jones from these royalties.

■ The trustee attempts to argue that CBS must proceed with its claim under the

restrictive set-off provisions of section 68 of the Bankruptcy Act, instead of possessing a general right of recoupment. The trustee apparently seeks to argue not only that recoupment is covered by section 68 but also that the set-off and recoupment processes are equivalent. The trustee is sorely mistaken on both points.

In the first place, no authority exists to support the trustee's assertion that recoupment is within the ambit of section 68.[3] Indeed, there is ample authority to the contrary. For example, the Third Circuit has stated that

> [t]he rule of recoupment in bankruptcy derives from the rule that the trustee takes the bankrupt's property subject to the equities therein. It does not attach by reason of the set-off provisions of Sec. 68, sub. a.

*In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir. 1944). Moreover, as one commentator has noted,

> The cases speak of recoupment, set off and counterclaim. . . . Recoupment dealing with diminishment of a claim due to something growing out of the same transaction is not dealt with as such by Section 68. There seems to be little doubt that it is available either to a trustee in bankruptcy or to a claimant. As to set off, one should look to applicable non-bankruptcy law to determine whether it fits within non-bankruptcy common law, equity or statutory principles. If so, one should consult Section 68 and cases thereunder to see if anything bars its use.

2 Cowens, Bankruptcy Law and Practice 121–22 (2d ed. 1978). Clearly, recoupment is entirely separate from the restrictive provisions of section 68.

■ Additionally, the recoupment process is different from the requirements for set-off. While set-off under section 68 is limited to instances involving mutuality of obligation, recoupment is subject to no such limitation. *See* 2 Cowans, *supra*, at 122–23. The only real requirement regarding recoupment is that a sum can be reduced only by matters or claims arising out of the same transaction as the original sum. *Id.* at 121; *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir. 1944). Despite the trustee's contention, the advances and royalties involved in this case unquestionably arise from the same transaction. Both grow out of the recording contract between Mr. Jones and CBS. In fact, no dispute over the royalties would exist but for the express provision in the contract calling for advances and their recoupment from royalties. Additionally, no question exists regarding the enforceability of such a contract provision against the bankruptcy trustee. *See, e. g., In re Sherman*, 627 F.2d 594 (2d Cir. 1980); *In re Creed Taylor, Inc.*, 10 B.R. 265 (Bkrtcy.S.D.N.Y.1981). In view of these considerations, CBS is clearly entitled to recoup its advances from the royalties at issue in this case.

### The Trustee's Right to an Accounting

As a final point, this Court rules that the trustee is entitled to an accounting of all royalties received by CBS from the sale of recordings made by George Jones prior to the date of his bankruptcy. The trustee is also entitled to an accounting of all advances to date recouped by CBS from these royalties. Because this Court has held that the royalties are the property of the estate, but subject to CBS's right of recoupment, the trustee must have all information regarding the royalties and advances. The

---

3. The trustee cites *Stanolind Oil & Gas Co. v. Logan*, 92 F.2d 28 (5th Cir. 1937), for support of his contention that recoupment is covered by section 68. As the trustee relates, the Fifth Circuit in that case did state that "[t]he doctrine of set-off and recoupment is recognized by the National Bankruptcy Act. Section 68." *Id.* at 32. This comment, however, is not only pure dicta—since the court in *Stanolind* was

not concerned with recoupment or set-off—it is also simply incorrect. As this Court notes in its discussion, *infra*, a distinction between recoupment and set-off has been universally recognized. To equate them, as the Fifth Circuit seems to have done and as the trustee would have this Court do, would fly in the face of both established authority and common logic.

trustee now stands in the place of the bankrupt with regard to these royalties. Should CBS recoup its advances and there be undepleted royalties, these would pass to the trustee for the benefit of the estate. The trustee must know if that event is a possibility, and if so, at what point in time it might occur. An accounting is thus necessary so that the trustee may be fully informed. Accordingly, this Court hereby orders CBS, Inc., to provide the trustee with an accounting of the royalties received and any advances recouped therefrom.