**In re PAPERCRAFT CORPORATION, Debtor–In–Possession.**

**SECOND PENNSYLVANIA REAL ESTATE CORPORATION, Movant,**

v.

**PAPERCRAFT CORPORATION, Respondent.**

**Bankruptcy No. 91–00903 JKF.**
**Motion No. 91–2790–M.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 14, 1991.

George M. Cheever, Kirkpatrick & Lockhart, Pittsburgh, Pa., for debtor.

Philip E. Beard, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for Unsecured Creditors' Committee.

Robert G. Sable, Stephen J. Laidhold, Sable, Markoroff, Sherman & Gusky, P.C., Pittsburgh, Pa., for Second Pennsylvania Real Estate Corp.

## MEMORANDUM OPINION ON MOTION FOR RECONSIDERATION

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court are motions for reconsideration filed on behalf of Debtor and on behalf of the Official Committee of Unsecured Creditors concerning the order of this court dated April 30, 1991, 126 B.R. 926 which required the Debtor to make post-petition lease payments but permitted certain reductions in the April rent based on prepaid items. At the hearing on the motion for reconsideration held on May 21, 1991, Movants[1] contended that at the hearing which led to the April 30 order they were surprised by Second Pennsylvania's (Lessor's) claim, based on the parties' use of an annual reconciliation at calendar year end, that an offset should not be permitted for prepaid taxes on a fiscal year proration. The parties conducted their business on the calendar year basis even though the taxing body at issue bills on a fiscal year.

■ The court provided an opportunity for the Debtor and the committee to cite in the record where surprise was claimed. Despite the requests of both parties for a week following the hearing of May 21 in which to do so, neither party submitted any information to the court.[2] Moreover, a fair reading of the record would substantiate that even if Debtor so claimed, the claim would not be meritorious. If any entity was surprised by a change in a relationship and practice among the parties, it would be Lessor. The first and only time that anyone requested a change in the calendar

1. This motion was filed by Debtor and the Creditors Committee at the same motion number as the original pleading. The references to movants, therefore, refer to them with respect to this motion for reconsideration only.

2. Debtor claimed at argument on this motion that it was surprised because Lessor did not provide its witness, a Mr. Karlton, for deposi-

tion prior to hearing. Lessor responds that Mr. Karlton was present in court and available although not called to testify. Had Debtor requested time at the evidentiary hearing to talk with him and/or to depose him about this matter the court would have granted that request. No request was made during that hearing.

year adjustments was when Debtor decided to reject the lease, the motion for which also is pending. Debtor then claimed a credit for prepaid taxes based on a fiscal, rather than calendar, year proration. The testimony establishes that, prepetition, the parties credited prepaid taxes against rent by taking one-twelfth of the previous calendar year tax payments and attributing that twelfth to the monthly rent. Prior to the inception of this bankruptcy case, the parties never used a fiscal year calculation. Therefore, the Debtor's request to offset all of its prepaid tax liability against one month's rent is not supported by the evidence and the motion for reconsideration on this basis must be denied.

▪ The next issue raised also concerned the tax proration. The court requested Debtor and the committee to provide cases which indicated that there was some support for the proposition that because a taxing body bills on a fiscal year basis, the offset, if any, must be determined on the fiscal year of the taxing body rather than on the parties' established method of conducting business. No such cases were submitted. The testimony clearly established a custom and practice between these parties of annualizing credits and debits on a calendar year basis.[3] Despite the clear provisions of the lease concerning who was to pay taxes and when, the parties' actual practice differed from their written contract. They agreed that the lease provisions were never followed. There is no evidence to support Debtor's claim that taxes should be prorated on a fiscal year basis for purposes of the requested setoff. For the reasons expressed by this court in its opinion of April 30, 1991, and by Judge Bentz in *In re Wheeling Pittsburgh Steel Corp.*, 109 B.R. 689 (Bankr.W.D.Pa.1990), the motion for reconsideration on this ground must be denied.

▪ Debtor next contended that its lease obligation is to *provide* utility services for various other tenants in the building, to pay for those utilities and then to be given a credit by Lessor for those payments made on behalf of third-party tenants. A reexamination of the lease reveals this argument to be spurious. There is no such obligation attributed to Debtor in the lease. The lease specifically requires *Lessor* to make electricity, water, sewer service and steam heat available. *See* ¶ 12(a) of the Lease. Debtor's responsibility is to pay for those utilities plus gas, power, telephone, etc., which *it* consumes. The lease specifically provides that Lessee (Debtor) has no obligation to pay for utilities for third-party tenants. *See* ¶ 12(f). Nonetheless, the testimony supports Debtor's contention that it paid for utility services for third-party tenants and was reimbursed for those services by Lessor.

The only issue addressed by the court in the April 30 Memorandum Opinion and Order was whether payments made, or to be made, by Debtor for utilities could be deducted from the April rent. The court determined that it would be appropriate to permit Debtor a credit for the utility services for which it had actually paid. For unpaid services, which are all prepetition unsecured claims, the Debtor may have an entitlement to an offset at some point in the future. The parties have on-going, competing claims. The Debtor may or may not pay all unsecured creditors 100 cents on the dollar. For this reason, it would be inequitable to allow Debtor an offset at 100 cents on the dollar for monies it has not expended against a rent obligation which it clearly owes at a time when it has not made the payment it seeks to offset. The court was concerned that the sole payment obligation for utilities for third-party tenants may not rest with the Debtor. Debtor contended that it is solely liable to the utility companies by contract with those companies but no evidence was introduced on this point. Debtor agreed that the utility companies may seek payment from Lessor, which, if it pays, would seek subroga-

---

**3.** The lease itself is silent as to whether the parties would allot payments on a calendar or fiscal year. However, ¶ 5.1(d) of the lease provides for monthly prorations and reimbursements of the 1988 prepaid taxes.

tion from Debtor.[4] However, no utility company is before the court seeking payment. Instead, the Debtor is attempting to reduce its monthly rent obligation to its landlord by the amount of a utility payment for which Debtor may be liable but which Debtor has not made. To the extent that Debtor pays unsecured creditors through its plan of reorganization, Debtor will satisfy its obligation to the utility companies. At that point if the Debtor has expended funds on behalf of third-party tenants, Debtor can seek reimbursement under and to the extent provided by the lease.

Debtor contended that the testimony of Frank Kane would substantiate its position concerning both surprise and the unpaid utilities. The court listened to the tape of Mr. Kane's testimony[5] again and finds no change in its earlier assessment of his testimony. For these reasons, the motion for reconsideration based on the claim for an additional credit for unpaid utilities will be denied.

The committee also contends that the setoff of the unpaid utilities should be permitted. The argument is that in other situations, a creditor who has an outstanding obligation to the Debtor is permitted an offset against unpaid obligations owing to it by the Debtor. Thus, the creditor's entire claim against the Debtor is reduced but no money changes hands. This situation is not analogous. Debtor's obligation in this case is not to make utility payments to Lessor. In fact, according to the lease, Debtor has no obligation to make the utility payments on behalf of third-party tenants at all. To the extent that the Debtor has an obligation to make the utility payments, that obligation runs to the utility which provided the service, not to Lessor. The parties, as a matter of convenience,

adopted the practice of having Debtor make utility payments, billing Lessor for the amounts chargeable to third-party tenants, and then receiving reimbursement from Lessor. Debtor has no right to credits from Lessor for amounts which remain unpaid. Debtor is entitled to reimbursement only after it pays the bill and invoices Lessor for the proportionate share.

Even the analogy to triangular setoffs is not appropriate in this situation. If Debtor were permitted to reduce its rent claim 100 cents on the dollar but then to pay the utility company less than in full, it would have received a windfall. Because there will be time to adjudicate the issues in an orderly fashion in claims litigation, the most reasonable solution is to allow the Debtor to deduct from its rent obligation those utility payments which it actually has made on behalf of third parties and to deal later with the issue of reimbursement for the as yet unpaid portion.

■ The next issue is whether or not the credit allowed against the rent is in the nature of setoff or recoupment.[6] As indicated in the opinion of April 30, 1991, the court did not draw a fine distinction because the parties had not done so at the initial hearings. Although the elemental differences in the doctrines are evident when a creditor attempts to establish a setoff or recoupment, they are blurred when a debtor invokes § 558, particularly in circumstances such as presented in this case. We note at the outset that § 553 of the Bankruptcy Code prescribes setoff but applies only to creditors. Recoupment is not mentioned in the Code but is utilized in bankruptcy by decision. *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984). Debtor's

---

4. Of course, any subrogation claim would be limited to the charges attributable to Debtor's use of the facility, which is significantly less than the total utility payments which Debtor makes. Lessor reimburses Debtor for the portions attributable to third-party usage.

5. The court also instructed Debtor's counsel to provide a transcript of that portion relative to surprise. Counsel did not do so. The court discovered none in its review of Kane's testimony.

6. Recoupment is "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the abatement or reduction of such claim." 4 COLLIER ON BANKRUPTCY ¶ 553.03 (15th ed. 1991). The doctrine has been utilized in bankruptcy to allow prepetition claims to be reduced by postpetition obligations arising from the same transaction. *See, e.g., Waldschmidt v. CBS, Inc.,* 14 B.R. 309, 314 (M.D.Tenn.1981).

claim to setoff or recoupment, therefore, must be based on the implicit incorporation of the doctrines into § 558, or by way of preservation of the Debtor's defenses by contract, or by some common law entitlement. Thus, we examine only this defensive action by Debtor, invoking § 558, to determine whether the postpetition rent may be reduced by amounts owed to Debtor, prepetition, by Lessor.

Section 558 preserves to the Debtor its prepetition defenses to causes of action. In that context, either setoff or recoupment would be available as a defense and, if established, would result in a netting out of what each party owes the other.

■ To establish setoff, the movant must show that there are mutual prepetition debts and that the result of the offsets will not improve the position of the creditor. The essential element of recoupment is that the debts must arise out of the same transaction. Setoff is a narrower, more restrictively applied doctrine than is recoupment. *See University Medical Center v. Sullivan*, 122 B.R. 919 (E.D.Pa.1990); *In re California Canners & Growers*, 62 B.R. 18 (9th Cir. BAP 1986); *In re Vaughter*, 109 B.R. 229 (Bankr.W.D.Tex.1989). The issues which typically arise with respect to setoff include how to determine what constitutes a prepetition obligation, how to define what is a mutual debt, and how to determine whether an improvement in position would result. With respect to recoup-

ment, the issues tend to be focused on what constitutes the "same transaction."

Concerning setoff as applied in this case, the parties have substantiated the mutuality[7] of the debts and the court finds that neither Debtor's nor Lessor's position would be improved by virtue of the limitations to rent reduction authorized by the court in these opinions and orders. The problem is that Debtor seeks to offset its prepetition prepayment of taxes against its postpetition rental obligation. Were this a creditor seeking a setoff, that time differential would be fatal to applying setoff principles. However, because § 558 preserves to the Debtor the defenses it would have had prepetition, the court must examine the transaction as though the bankruptcy had not been filed.[8] Doing so eliminates the prepetition/postpetition distinction and, in essence, obliterates the requirement that the mutual debts must both be prepetition obligations in a § 558 context. Removing that distinction further obscures the difference between "setoff" and "recoupment." What remains clear in this case, though, is that without the time line barrier, Debtor has the defense of setoff available.

■ The recoupment doctrine has a different constraint, i.e., the necessity that the debts arise out of the same transaction. In this case, the parties agree that the obligations at issue derive from the same transaction,[9] i.e., the sale and leaseback of Papercraft Park. *Cf., In re Vaughter*, 109 B.R. 229 (Bankr.W.D.Tex.1989) (obligations

---

7. Mutuality requires contemporaneous transactions between parties acting in the same capacity. *Stamp v. Insurance Company of North America*, 908 F.2d 1375 (7th Cir.1990). In this case the sale and leaseback were contemporaneous transactions by parties who had the same right and capacity, i.e., Debtor = Sellor and Lessee; Second Pennsylvania = Purchaser and Lessor. *See In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830 (Bankr.S.D.N.Y.1990). *See also In the Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54 (3d Cir.1990).

8. As stated in 4 COLLIER ON BANKRUPTCY ¶ 558.02 (15th ed. 1991), in order to defeat improper claims against the estate, the Trustee "must be able to assert all the defenses that the Debtor could have asserted had bankruptcy not intervened."

9. We note that setoff is used in situations in which the parties engaged in different transactions but see nothing to prohibit its use in this case. For this purpose, the sale could be seen as one transaction and the lease another. Part of the setoff involves unpaid interest due by Lessor to Debtor on the note and mortgage issued at the sale closing. That obligation is not part of the lease. However, the sale was subject to Debtor's agreement to lease back part of the building. In these circumstances, the parties intended to engage in a course of dealing through their contemporaneous transactions. To separate out the parts of the transaction is contrived. To say that all obligations arose from one contractual instrument is equally as contrived. This sequence of events is not uncommon in today's economic climate and leads to the conclusion that this whole transaction is the sum of its parts. The effort to characterize the events as separate or as one pinpoints even

arising from a lease are part of a recurring transaction which are governed contractually by the terms of the lease). We must then examine whether there is a contractual or other basis for recoupment.

The lease, which is an executory contract, does not require Debtor to pay taxes and utilities for third parties and to receive a credit against rent in exchange. However, the business practice of the parties was to have Debtor do so and to "net out" their claims via an annual reconciliation. There is, therefore, a course of dealing which purportedly recognizes recoupment.[10]

In the context of this case, whether one chooses to apply the label "setoff" or "recoupment" seems of little import. Because the court has required the Debtor to make the prerejection, postpetition rent payments in accord with the provisions of the lease, the court finds that recoupment is appropriate in this case despite Debtor's effort to reject the lease. The court has balanced the equities and exercises its discretion to limit the reduction to the April rent as indicated. In this case the netting out of the claims as provided by this court's opinion and order of April 30 and of today is permissible under either doctrine: setoff or recoupment. *See* footnote 9, *supra.*

Finally, after the court issued its opinion of April 30, Debtor filed an affidavit indicating that Frank Kane's testimony had been incorrect in its computation of the portions of the utilities which had been paid. Because the affidavit substantiates that there was *less* money paid to the utilities than Kane's testimony indicated, Lessor agreed to a recomputation of the setoff

amounts based upon the information in the affidavit. Therefore, the motion for reconsideration concerning the amount of the offset will be granted. At page 12 of the Memorandum Opinion of April 30, 1991, the court found that Debtor had paid $37,871.61 with respect to utilities. The affidavit, however, substantiated that Debtor had paid only $26,229.50. Thus, the credit to Debtor against the April rent must be decreased by $11,642.11. The Order of April 30, 1991, will be amended to require Debtor to pay to lessor the rents which were due on April 1 to the extent that they exceed $56,716.40.

An appropriate Order will be entered.

---

further the confusion in labeling the "netting out" in this case as "setoff" or "recoupment." The parties routinely conducted their business relationship in this fashion prepetition and it makes little sense to require a different practice while that relationship continues in Chapter 11. One author suggests that the origins of setoff may have their roots in the context of one transaction. *See* Sepinuck, *The Problems With Setoff: A Proposed Legislative Solution,* 30 WILLIAM & MARY L.REV. 51, 52–53 (1988). If this is so, the necessity to find two separate transactions for setoff may be unnecessary on the facts of this case.

**10.** Authority exists in the case law for the proposition that the Debtor may not recoup unless he *assumes* an executory contract. *See In re Memorial Hospital,* 82 B.R. 478 (W.D.Wis.1988), appeal dismissed, 862 F.2d 1299 (7th Cir.1988). *But see, University Medical Center v. Sullivan,* 122 B.R. 919 (E.D.Pa.1990) (recoupment permitted before executory contract was either assumed or rejected). This Debtor seeks to *reject* the lease and to terminate its landlord-tenant relationship with Lessor. Debtor has substantiated its entitlement to the defense of recoupment through custom and usage.