**In re NEWBERY CORPORATION, fka Newbery Electric, Inc., Debtor.**

**NEWBERY ELECTRIC, INC., Appellant,**

**v.**

**MCI CONSTRUCTORS, INC., Appellee.**

Bankruptcy No. 87–3466–PHX–RGM.

Adv. No. 88–817–PHX–RGM.

BAP No. AZ–91–2045–MeJR.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted March 19, 1992.

Decided Oct. 20, 1992.

Malcolm A. Misuraca, San Francisco, for appellant.

Charles W. Lowe, Phoenix, Ariz., for appellee.

Before MEYERS, JONES and RUSSELL, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

Newbery Electric, Inc. ("Debtor") appeals from the order of the bankruptcy court which held that MCI Constructors, Inc. ("MCI") is entitled to recoup pre-petition damages from post-petition rents claimed by the Debtor. We AFFIRM.

## II

## FACTS

On April 30, 1985, MCI entered into a contract to construct a wastewater treatment plant ("Project") for the city of Pueblo, Arizona. On November 1, 1985, MCI retained with the Debtor to perform electrical work on the Project. On June 2, 1987, the Debtor abandoned work on the Project, leaving its tools and equipment on the site. On June 9, 1987, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("Code").

Meanwhile, MCI retained another subcontractor to complete the electrical work on the Project. In so doing, MCI and the replacement subcontractor used and retained the Debtor's tools and equipment. On November 3, 1987, the Debtor requested MCI to return its tools and equipment. MCI refused, claiming that it was mitigating its damages caused by the Debtor's breach of contract.[1] In response, the Debtor billed MCI in the amount of $322,079.00 for the rental of the tools and equipment.

When MCI failed to pay the rental charges claimed, the Debtor commenced an adversary proceeding in the bankruptcy court. In its defense, MCI claimed that it incurred $323,989.91 in pre-petition damages as a result of the Debtor's breach of contract. MCI filed a motion for partial summary judgment, arguing that it could recoup its claim for damages against any rents it may owe to the Debtor. The Debtor filed a cross-motion claiming that recoupment would be improper. After a hearing, the bankruptcy court issued an order that entitled MCI to recoup its damages against the Debtor's claim for rents after obtaining relief from the automatic stay. The Debtor appeals.

## III

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law *de*

novo. *In re Holm*, 931 F.2d 620, 622 (9th Cir.1991); *In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 613 (9th Cir. BAP 1990).

The bankruptcy court's grant of summary judgment is reviewed *de novo. In re Eastport Associates*, 935 F.2d 1071, 1079 (9th Cir.1991); *In re Southland + Keystone*, 132 B.R. 632, 637 (9th Cir. BAP 1991). The reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *In re Southland + Keystone, supra*, 132 B.R. at 637; *In re Pioneer Technology, Inc.*, 107 B.R. 698, 700 (9th Cir. BAP 1988).

## IV

## DISCUSSION

Under the doctrine of recoupment, a creditor may assert a countervailing claim against a debtor's claim if both claims arise out of the same transaction. *In re California Canners and Growers*, 62 B.R. 18, 19 (9th Cir. BAP 1986); *In re Papercraft Corp.*, 127 B.R. 346, 350 (Bkrtcy.W.D.Pa. 1991). The creditor's claim is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation. *In re California Canners, supra*, 62 B.R. at 19; *University Medical Center v. Sullivan*, 122 B.R. 919, 925 (E.D.Pa.1990), *aff'd* 973 F.2d 1065 (3d Cir.1992).

The essential element of recoupment is that the debts must arise out of the same transaction. *In re Papercraft Corp., supra*, 127 B.R. at 350. In the instant appeal, MCI's claim for prepetition damages arose out the contract for electrical work and the Debtor's breach of that contract. The Debtor's claim for post-petition rents arose out of MCI's use and retention of the Debtor's tools and equipment in its effort to mitigate the damages from the

---

1. MCI claims that, under the provisions of the subcontract, it was entitled to use and retain the Debtor's tools and equipment upon a default by

the Debtor. Our review of the contract reveals no such provision. MCI does not dispute the Debtor's claim for rents.

breach. Thus, the two claims arise out of the same transaction.

The dissent argues that the two claims do not arise out of the same transaction because MCI's use of the tools and equipment was not contemplated by the parties at the time the agreement was made. The dissent reasons that MCI's damages claim and the Debtor's claim for rents are not integral to each other and are easily severable.

 We must consider, however, that once MCI learned of the Debtor's breach, it had a duty to mitigate its damages to the extent reasonably possible under the circumstances. *La Casa Nino, Inc. v. Plaza Esteban,* 762 P.2d 669, 673 (Colo.1988); *Schneiker v. Gordon,* 732 P.2d 603, 611 (Colo.1987); *Tull v. Gundersons, Inc.,* 709 P.2d 940, 946 (Colo.1985).[2] MCI was required to take such steps as a reasonably prudent person would take in like circumstances.[3] *Brenaman v. Willis,* 136 Colo. 53, 314 P.2d 691, 693 (1957); *Bert Bidwell Inv. v. LaSalle & Schiffer,* 797 P.2d 811, 812 (Colo.App.1990). After taking the steps necessary to mitigate its damages, MCI would have been entitled to compensation for its expenditures. *Tull, supra,* 709 P.2d at 946.

Because MCI had a duty to mitigate damages, both claims arise out of the same transaction. MCI hired another contractor and allowed the new contractor to use the Debtor's tools and equipment in order to mitigate damages to the extent reasonably possible. The Debtor's claim for rents would not have arisen had it not been for MCI's use of the equipment. MCI would not have used the Debtor's tools and equipment had it not been for the Debtor's breach of contract. Contrary to the dissent's view, the two claims are integral to each other and cannot be severed.

 Generally, debts that arose before a bankruptcy petition was filed may not be satisfied through post-petition transactions. *In re B & L Oil Co.,* 782 F.2d 155, 158 (10th Cir.1986). This principle is seen in bankruptcy restrictions on setoffs. *Id.* However, the recoupment doctrine has traditionally operated as an exception to the rule. *Id.* at 159. The purpose of asserting a claim in recoupment is to determine the just liability on the plaintiff's claim and since both claims arise out of the same transaction, recoupment should be allowed regardless of whether one claim arose pre-petition and the other post-petition. *In re Clowards, Inc.,* 42 B.R. 627, 628 (Bkrtcy D.Idaho 1984). Indeed, to allow a debtor to cut off a creditor's defense simply because the defense arose pre-petition and the claim arose post-petition would be inequitable. *University Medical Center, supra,* 122 B.R. at 925. Accordingly, MCI may recoup its pre-petition damages against the Debtor's claim for post-petition rents.[4]

AFFIRMED.

RUSSELL, Bankruptcy Judge, dissenting:

I cannot join in the majority's view. After considering the application of the common law doctrine of recoupment, I can only conclude that its correct application is much narrower than the majority's reading. Recoupment should not be applied based on the facts of this case.

A. *Definition of the Doctrine.*

The doctrine of recoupment is of common law origin. 80 C.J.S. *Recoupment* § 2 (1953). Recoupment originated as an equitable rule of joinder allowing the adjudication in one suit of two claims that otherwise had to be brought separately under the common law forms of action. Under recoupment, a defendant could meet a plaintiff's claim with the countervailing claim that arose "out of the same transaction." *In re California Canners and*

---

**2.** Paragraph 29 of the contract states: "This Subcontract Agreement is executed pursuant to and governed by the laws of the State of Colorado."

**3.** The Debtor has raised no argument that MCI acted unreasonably in mitigating its damages.

**4.** This result is not inconsistent with the decision in *In re California Canners* since in that case the Panel denied recoupment on the ground that the two claims did not arise from the same transaction. 62 B.R. at 20.

*Growers*, 62 B.R. 18 (9th Cir. BAP 1986). *See* 3 Jeremey C. Moore et al., *Moore's Federal Practice* ¶ 13.02, at 13–12 n. 1 (2d ed. 1985); 20 Am.Jur.2d *Counterclaim, Recoupment & Setoff* §§ 11, 12 (1965). "The rule of recoupment in bankruptcy derives from the rule that the trustee takes the bankrupt's property subject to the equities therein. It does not attach by reason of the set-off provisions [now found in § 553]." *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir.1944).

> Recoupment is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.

4 *Collier on Bankruptcy*, § 553.03 (Lawrence P. King ed., 15th ed. 1984).

The concept of recoupment may be best illuminated by describing what it is not:

> The fundamental philosophy of all set-offs and recoupment is that they are offered by a defendant in opposition to some money demand asserted by plaintiff. Where defensive matter interposed by defendant constitutes an independent cause of action and does not go to the foundation of the plaintiff's claim, it cannot operate as a reduction of the demand except by way of set-off or counterclaim. A true cross action or counterclaim is not the same action asserted by plaintiff because of its very nature.

80 C.J.S. *Recoupment* § 2 (1953) (citations omitted).

Most notably, recoupment has been described as a "liberal and beneficial improvement on the old doctrine of failure of consideration." 80 C.J.S. § 2 *Recoupment* (1953) (*citing Peuser v. Marsh*, 167 A.D. 604, 153 N.Y.S. 381 (1915) *aff'd* 218 N.Y. 505, 113 N.E. 494 (1916)). Therefore the requirement of the "same transaction," stated by itself, is hardly descriptive of its narrow application. In fact, it is misleading. To merely state that recoupment arises when the "same transaction" is involved is to broaden its application beyond what it actually covers, potentially into a counterclaim. *See* Fed.R.Civ.P. 13. But from the definitions discussed above, it is clear that recoupment arises from much narrower circumstances than those under which a counterclaim would arise, e.g., out of the same set of operative facts. "The fact that the same two parties are involved and that similar subject matter gave rise to both claims, however, does not mean that the two arose from the 'same transaction.'" *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984). "More than mutuality of obligation is required." *University Medical Center v. Sullivan*, 122 B.R. 919, 928 (E.D.Pa.1990), *aff'd* 973 F.2d 1065 (3d Cir. 1992).

For recoupment to apply, that which is sought to be recouped must be an integral part of the transaction itself, one that does not stand as a separate cause of action apart from the subject action. *It operates more as an adjustment of ones liability, an abatement or reduction of a claim, rather than a separate claim.* "[R]ecoupment goes to the justice of the plaintiff's claim and no affirmative judgment for any excess over the claim of the plaintiff can be awarded thereon." *In re American Central Airlines, Inc.*, 60 B.R. 587, 590 (Bkrtcy.N.D.Iowa 1986). In sum, recoupment is narrower than set-off or counterclaim, but broader than failure of consideration.

As the majority recognizes, recoupment operates as an exception to the rule that pre-petition debts cannot be satisfied out of post-petition transactions. *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986). The reasoning is that "it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *Id.* at 157. (*quoting Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984). The analysis for justifying recoupment "is based on the treatment of executory contracts in bankruptcy: a debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of 'recoupment')" *Schweiker*, at 876. "There is no element of preference here or of an inde-

pendent offset but merely an arrival at a just and proper liability on the main issue." *In re American Central Airlines, Inc.,* 60 B.R. 587, 590 (Bkrtcy.N.D.Iowa 1986) (*citing* 4 *Collier on Bankruptcy,* ¶ 553.03 (Lawrence P. King ed., 15th ed. 1984)).

### B. *Application.*

Most of the cases where recoupment has been found to properly apply involved an adjustment of overpaid or advanced funds. *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (M.D.Tenn.1981); *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bkrtcy. S.D.N.Y.1982), *aff'd,* 34 B.R. 385 (S.D.N.Y. 1983); *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262 (D.Utah 1983); *In re American Central Airlines, Inc.,* 60 B.R. 587 (Bkrtcy.N.D.Iowa 1986); *In re B & L Oil Co.,* 782 F.2d 155 (10th Cir.1986).

In the typical recoupment scenario, advance payments are made in situations where the exact dollar amount of liability on a contract cannot be determined, subject to adjustment once the final liability is known. The party advancing the funds pre-petition would then assert a post-petition reduction from the final obligation by the amount of the funds advanced.

For example, a recording artist signs a contract with a record company whereby he would receive royalties upon the sale of the records. During the recording and production process, before the records are ready for sale, the record company gives money to the artist as an advance against the future royalty payments, which would then be repaid (recouped) out of the proceeds generated from record sales. Using the same example, if the musician filed for Chapter 7 relief, after the advance was made but before royalties were paid, the trustee for the musician's Chapter 7 estate could sue the record company for unpaid royalties due the estate. The record company could then assert the advances already paid as a reduction of the amount owed, i.e. recoupment. *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (M.D.Tenn.1981) (Record company was allowed to recoup pre-petition advances made to a recording artist against liabilities for royalties from post-petition record sales.)

Similarly, recoupment has been applied to reduce liability when progress payments on construction or repair contracts were made in excess of the value of the work performed pre-petition and performance continued post-petition. For example in *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262 (D.Utah 1983), Midwest would bill the federal government for progress payments for the maintenance, repair and overhaul of heavy construction and industrial vehicles. Upon presentation of the final invoice after the work has been completed, the government would deduct amounts already paid and only pay the remaining balance due on the contract. *Id.* at 264. After had Midwest filed its petition, the government discovered that some progress payments had exceeded the fair value of the work performed. *Id.* Midwest continued to perform work for the government as debtor in possession. The government recouped the amount of overpayment from amounts due to Midwest on the post-petition work. The district court ruled that the recoupment was proper, reversing the bankruptcy court order holding the government in contempt for violating the automatic stay. "The government was simply applying the progress payment clause to the single transaction to determine how much was due Midwest." *Id.* at 266.

Similarly, recoupment has been also applied to allow the government to recoup Medicare overpayments from post-petition reimbursements to a hospital continuing to operate in Chapter 11. *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bkrtcy.S.D.N.Y.1982), *aff'd,* 34 B.R. 385 (S.D.N.Y.1983). *But cf. University Medical Center v. Sullivan,* 122 B.R. 919 (E.D.Pa.1990), *aff'd,* 973 F.2d 1065 (3d Cir. 1992).

Recoupment has also been applicable to allow the government to recapture pre-petition overpayments of subsidies by reducing subsequent subsidies for services rendered post-petition. *In re American Central Airlines, Inc.,* 60 B.R. 587 (Bkrtcy.

N.D.Iowa 1986). In *American Central,* the Department of Transportation advance estimated subsidy payments to a passenger air carrier for providing services to Essential Air Service routes. These estimated subsidies were subject to adjustment after the completion of audits by the government. When it was determined that it had overpaid on the estimated subsidies, the government began to withhold monthly subsidy payments until the overpayment was recovered. After filing a chapter 11 petition, American Central sued for the subsidy payments earned after the filing of the petition. The court held that the government was entitled to assert the overpayments against any amount of subsidy under the doctrine of recoupment. *Id.* at 589.

Recoupment was applied to allow an oil company to recover pre-petition overpayments to a debtor by withholding amounts owed on post-petition deliveries because the amounts were held to be a reduction of the liability on the same contract. *In re B & L Oil Co.,* 782 F.2d 155 (10th Cir.1986). In *B & L Oil,* the court reasoned that the recovery of overpayments was similar to advances to a musician, or medicare overpayments to a hospital, where recoupment was allowed. *Id.* at 157.

The cases cited by the majority simply do not support its conclusion. Indeed, recoupment was held not to apply in two cases relied on by the majority. Recoupment was not allowed in *In re California Canners and Growers,* 62 B.R. 18 (9th Cir. BAP 1986), because the Panel found that a series of separate and distinct transactions had taken place. *California Canners and Growers* involved a distributorship arrangement where California Canners would sell goods to Military Distributors, Inc., who would then deliver these to military installations at the direction of California Canners. Military Distributors billed California Canners for the goods it delivered. California Canners in turn billed the government. California Canners received payment from the government, but did not pay Military Distributors for several separate orders and shipments taking place before California Canners filed bankruptcy. Military Distributors was not allowed to recoup its pre-petition claim against California Canners' post-petition debt to Military Distributors. The court concluded that the claims did not arise out of the same transaction and that the "agreement between the parties show[ed] that the arrangement was intended to establish an overall relationship between the parties." *Id.* at 20.

Recoupment was also not allowed in *University Medical Center v. Sullivan,* 122 B.R. 919 (E.D.Pa.1990) *aff'd,* 973 F.2d 1065 (3d Cir.1992). There, the University Medical center, who had filed Chapter 11, had been overpaid for pre-petition services by the Department of Health and Human Services ("HHS"). HHS withheld interim payments for post-petition services in order to reduce the overpayment. The Medical Center brought an adversary proceeding against HHS to obtain the interim amounts. HHS asserted recoupment of the overpaid amounts as a defense. The court held that recoupment did not apply because the provider agreement delineated only the general nature of the relationship between HHS and the Medical Center and did not provide for specific distinct transactions. *Id.* at 930. "Here the pre-petition overpayments were made with respect to transactions separate from those on which the debtor sought post-petition payment." *Id.* at 929. The court in *Sullivan* rejected the holding in *B & L Oil* as being unpersuasive and that it "stretches the doctrine of recoupment beyond its equitable foundation." *Id.* at 929.

## C. Analysis.

Recoupment is not appropriate in the instant case. The two claims do not arise out of the same transaction. MCI has a pre-petition claim for contract damages due to the Debtor's failure to complete the electrical work it was contracted to do. The Debtor has a post-petition claim for the rental value of tools used by MCI. These are two separate and distinct transactions. The Debtor was contracted to complete its portion of the work. MCI's use of tools and equipment was not even contemplated by the parties at the time the agreement was made. Equipment rental was certainly

not part of the 'same transaction' as defined by the cases and writings defining recoupment. The two transactions are not integral to each other. They are easily severable: The equipment rental and the electrical work could just as well have been contracted out to two different, unrelated parties. The only nexus here is that the same party who was to perform the work was the same party that owned the equipment that MCI used. While I agree with the majority that the same subject matter gave rise to both transactions, the same subject matter alone is not enough to apply recoupment.

As stated before, most of the cases where recoupment was found to properly apply involved an adjustment of overpaid or advanced funds. *See Waldschmidt; In re Yonkers Hamilton Sanitarium, Inc.; Midwest Service and Supply; In re American Central; B & L Oil; (See:* Section B. *Application, supra* ). Unlike these cases, there is no overpayment or advances of funds in the case before us. No obligation in the subcontract agreement provides for the use of tools or rental of equipment[1].

The only decision allowing recoupment that resembles the facts of this case is *In re Clowards*, 42 B.R. 627 (Bkrtcy.D.Idaho 1984). That decision is not binding, nor is its application of recoupment in conformity with the prior decisions applying recoupment.

In *Clowards*, recoupment was applied to allow for the reduction of a contract liability by the amount of damages incurred. The Chapter 7 debtor was a contractor who was unable to complete several contracts for masonry work. The trustee for the debtor's estate was unable to recover the balance due on the contracts without the contractors being allowed to assert their damages for breach of contract against the those balances due. *Id.*

The facts of *Clowards* are more in the nature of mutual claims governed by § 553 regarding set-off. *Clowards* did not involve any overpayment or advance of funds as do the cases properly applying recoupment. *See:* B. *Application, supra.* I believe that under the narrow definition of what constitutes the same transaction, recoupment was not appropriate in *Clowards*, nor is it appropriate in the case at bar.

To summarily conclude on the facts of this case that the two obligations arise from the same transaction is to misapply the doctrine and to unduly expand its application. It is not appropriate for this Panel to extend the equitable doctrine of recoupment, reserved for much narrower application, beyond its intended reach. I decline to do so. Respectfully, I would reverse.

---

1. The applicability of recoupment doctrine is not contingent on their being an express contract provision contemplating recoupment. *Holford v. Powers,* 896 F.2d 176 (5th Cir.1990). In *Holford* the court held:

 There need not have been any express contractual right to withhold payments for the transaction to be a recoupment.... The equitable doctrine of recoupment should not depend on whether the parties expressly anticipated the problem ...

 *Id.* at 178. (*citing In re B & L Oil Co.,* 782 F.2d 155, 159 (10th Cir.1986).