**In re WHEELING–PITTSBURGH STEEL CORPORATION, et al., Debtor.**

**Bankruptcy No. 85–793 PGH. Motion Nos. 89–4834, 87–6370.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 26, 1990.

Kevin C. Hansen, Pittsburgh, Pa., for Bethlehem Rail Acquisition Corp.

Ronald W. Schuler, Pittsburgh, Pa., for debtor.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

The debtor, Wheeling–Pittsburgh Steel Corporation, filed its Petition for Reorganization under Chapter 11 of the Bankruptcy Code on April 16, 1985. In September, 1988, Bethlehem Rail Acquisition Corporation, Inc. ("Bethrail") submitted a $20 million bid for property owned by the debtor known as the Monessen Rail Mill ("Rail Mill"). The sale was approved by this court and Bethrail and the debtor executed closing documents on December 30, 1988.

In connection with the closing on the sale of the Rail Mill, the debtor paid certain outstanding real property taxes assessed against the Rail Mill. However, with respect to Monessen School District taxes ("Monessen taxes") assessed for the period July 1, 1988 through June 30, 1989 and invoiced to the debtor on August 1, 1988, debtor paid only $142,327.02, representing one-half of the amount assessed and invoiced.

The within dispute concerns whether the remaining balance of the Monessen taxes is payable by the debtor or by Bethrail.

It is the debtor's position that the Monessen taxes billed on August 1, 1988 were assessed for the period July 1, 1988 through June 30, 1989 on a fiscal year basis; closing of the sale occurred on December 30, 1988; therefore, Bethrail owes the balance of the Monessen taxes as its prorata share for the period January 1, 1989 through June 30, 1989. The debtor also asserts that the contract documents support such proration. The debtor further asserts that the Rail Mill was taxable in its hands for three years (January 1, 1986—December 30, 1988) and that the debtor has paid the equivalent of three years taxes; therefore, it would be inequitable to require any further payment by the debtor.

Bethrail's position is that, under the contract documents and in accordance with local custom, the Monessen taxes are to be prorated on a *calendar* year basis and therefore, the debtor is responsible for payment of the balance due on the Monessen taxes.

### Issue

The issue is the extent to which Bethrail as buyer and the debtor as seller of the Rail Mill real estate are each responsible for payment of real estate taxes invoiced on August 1, 1988 representing an assessment for the period July 1, 1988—June 30, 1989 when the sale closed on December 30, 1988.

### Discussion

Bethrail closed the transaction for purchase of the Rail Mill on December 30, 1988 under the mandate of this court to either close the deal or abandon it, but with the power, under the same mandate, to reserve rights as to any matter.

Pursuant to its reservation of rights, Bethrail in its Motion for Judicial Determination of Rights dated January 31, 1989, objected to the proration used by the debtor for payment of the Monessen taxes.

Proration of real estate taxes is not a matter of law, it is a matter of contract. A purchaser of real property may, before signing a contract of purchase, insist that the contract provide that all taxes which have been invoiced must be paid before closing. In that event, at closing, the purchaser receives the benefit of prepaid taxes. On the other hand, the purchaser may

agree by the contract to accept title notwithstanding unpaid taxes. In that event, the seller has no obligation to pay unpaid taxes—even though the seller received the benefit of the property without paying the taxes attributable to the period of time when he was the owner.

This court confirmed the sale of the Rail Mill to Bethrail on October 3, 1988. Our ORDER confirming the sale provided:

5. All claims, liens or other charges of the Respondents against the facility as listed on Exhibit A [including The School District of Monessen] ... are transferred to the proceeds of the sale as their interests may appear if and to the extent that they are determined to be valid against the Facility, so that this sale shall be free, clear and divested of said claims, liens or other charges.

It would seem that this language, in the absence of a coherent contract clause on tax proration, requires the seller to convey the property free of real estate taxes which had theretofore been assessed and invoiced.

The contract between the parties ("Agreement of Purchase and Sale") was signed on the same date as the closing, December 30, 1988. The Agreement of Purchase and Sale was intended to refine the pre-existing contract created by Bethrail's bid, the debtor's acceptance, and the approval of the court. The documents dated prior to December 30, 1988 said nothing relating to tax proration except that the title would be free and clear. The only other contractual provision between the parties relating to tax proration is § 1.5(c) of the Agreement of Purchase and Sale which provides:

The pro rata share of all property ... taxes ... which are payable prior to, at the time of or subsequent to the date hereof and relating to a period of time prior to, at the time or subsequent to the date hereof shall be determined on the date hereof and appropriately credited to the extent possible.

Debtor argues that the words "relating to a period of time" give the words meaning. We read § 1.5(c) to provide that a "pro rata share of all property ... taxes ... [whenever payable] ... shall be determined on the date hereof and appropriately credited," which gives us no guidance. That language does not state that all annual ad valorem taxes shall be deemed to be on a fiscal year basis. Nor does it state that such taxes shall be prorated on a calendar year basis. Therefore, § 1.5(c), while specifying that there should be a tax proration, is totally meaningless as to how the tax proration should be computed.

We must therefore rely either on paragraph 5 of the Order of October 3, 1988, or on custom.

Lawyers in the conveyancing business ordinarily handle the problem by standard language in the contract of sale which (1) *deems* all ad valorem annual real estate taxes to be applicable to the calendar year (January 1 to December 31) in the year invoiced and (2) provides that such taxes be prorated to the date of the closing, with each party paying his proportionate share based on the length of his ownership during the calendar year. That practice then becomes "custom."

■ Here there are two communities involved, Westmoreland County and Allegheny County. The parties have agreed that both counties have the same custom and that that custom is to "deem" all real estate taxes to be based on a calendar year, running from January 1 to December 31. Therefore, the Monessen taxes billed on August 1, 1988 are "deemed" by custom to be for calendar year 1988. We conclude that such taxes should therefore be prorated as such. The Monessen taxes were invoiced and payable prior to the December 30, 1988 closing. Pursuant to this court's October 3, 1988 ORDER, Bethrail acquired the Rail Mill free and clear of all claims. That provision was subject to the tax proration provided for in § 1.5(c) of the Agreement of Purchase and Sale; but gives us no guidance except that some kind of tax proration was expected. In the absence of a contractual provision dictating the method of tax proration, we will prorate the tax according to local custom. The debtor is obligated to pay 364/365ths of the tax

**692**

amount and Bethrail is obligated to pay 1/365th of the tax amount.

Tax proration is a matter of agreement between the parties. It is not a matter of fairness or equity. Customary agreements between buyers and sellers, and "custom" resulting therefrom are attempts to provide certainty as to the handling of such taxes as between buyer and seller. "Certainty" and "foreseeability" in dividing expenses seem to outweigh exact "fairness" or "equity," as between buyer and seller. Seller's good luck or bad luck at some remote earlier year should have no bearing on the proration of current costs. It is therefore immaterial that the debtor paid three and one-half year's taxes, but only used the property for the three years from January 1, 1986 to December 30, 1988.

An appropriate order will be entered.

### ORDER

This 26 day of January, 1990, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED:

1. Wheeling–Pittsburgh Steel Corporation shall pay the amount of $141,547.18 from operating funds for real estate taxes on the Monessen Rail Mill as invoiced on August 1, 1988.

2. Bethlehem Rail Acquisition Corporation, Inc. shall pay the amount of $779.87 for Monessen School District real estate taxes on the Monessen Rail Mill as invoiced for August 1, 1988.

3. We reserve the question of whether Wheeling–Pittsburgh Steel Corporation is entitled to reimbursement of the Monessen taxes from the sale proceeds of the Rail Mill for later determination.

4. Counsel for Wheeling–Pittsburgh Steel Corporation shall serve this Order and the accompanying Opinion on Bethrail and its counsel of record and to all parties on the current service list.