**In re PAPERCRAFT CORPORATION, Debtor–In–Possession.**

**SECOND PENNSYLVANIA REAL ESTATE CORPORATION, Movant,**

**v.**

**PAPERCRAFT CORPORATION, Respondent.**

**Bankruptcy No. 91–0903 JKF.**
**Motion No. 91–2790–M.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 30, 1991.

As Amended on Reconsideration June 14, 1991.*

* See 127 B.R. 346.

George M. Cheever, Kirkpatrick & Lockhart, Pittsburgh, Pa., for debtor.

Philip E. Beard, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for Creditors' Committee.

Robert G. Sable, Sable, Makoroff, Sherman & Gusky, P.C., Pittsburgh, Pa., for Second Pennsylvania Real Estate Corp.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the Court is the motion of Second Pennsylvania Real Estate Corporation (Lessor) to compel payment of administrative rent allegedly owed it by the Debtor-in-Possession, Papercraft Corporation (Debtor). Debtor was not in default prepetition. Debtor filed this Chapter 11 bankruptcy on March 22, 1991. The first rental payments due postpetition were to be paid to Lessor on April 1, 1991. Debtor failed to make the payments required by the written lease agreement and contends that it is entitled either to set off or to recoup against its April rent obligation certain prepetition prepayments it made pursuant to the lease.

The Official Committee of Unsecured Creditors (Committee) also answered the motion and contends that the entire matter should be postponed until May 22, 1991, sixty (60) days post filing, pursuant to 11 U.S.C. § 365(d)(3) because Debtor has filed a motion to reject the lease which is scheduled to be heard on May 16, 1991. Section 365(d)(3) allows the Court, for cause, to extend the time for a debtor's performance of any obligation pursuant to a lease which arises within sixty (60) days after the date of the order for relief, provided that the performance is not extended beyond such sixty (60) days. Lessor asserts that it is entitled to full payment as provided in the lease as administrative rent and that there is no purpose to be served in delay. Debtor intends to vacate the leased premises on or about May 1, 1991, and has entered into a new lease with a different landlord at a different location.

An evidentiary hearing was conducted. From the evidence adduced and the stipulations of the parties, the Court finds as follows: Debtor listed Lessor as one of its largest creditors, holding a claim in excess of $20 million. Lessor's claim arises from a series of transactions in May of 1988 wherein Debtor sold its principal manufacturing facility and warehouse located in O'Hara Township, Allegheny County, Pennsylvania, to First Pennsylvania Real Estate Corporation.[1] As part of that transaction, First Pennsylvania leased back to the Debtor approximately one-third (⅓) of the premises or 292,440 square feet for a period of fifteen (15) years at a base rental of $1 million per year plus certain additional rental payments, reimbursement of taxes, and utility payments. Debtor took possession of the leased space. Some time after May of 1988 and before the bankruptcy petition was filed, Debtor sublet approximately 196,000[2] square feet of its space. Debtor collected the rental payments from its subtenant and received the rent for April. The base rent which Debtor is required to pay to Lessor under the lease is $83,333.33 per month. Debtor's monthly prorated tax payment is $18,437.26 based upon last year's tax assessments. The parties adjust the total tax payments and other "pass through" charges[3] on an annual basis at the end of the calendar year.

The lease contains a detailed explanation of the parties' obligations to apportion and pay various real estate taxes. Both sides agree, however, that the lease was never followed with respect to the taxes. For example, under ¶ 5.1 of the lease, Debtor is liable to Lessor for the payment of all regular taxes and general or special assessments attributed to the property including real estate taxes. Lessor's responsibility is to pay timely all the taxes affecting the property directly to the appropriate taxing authority. Lessor also is required to provide Debtor with a copy of the tax bills and a statement of the amount of taxes owed by Debtor within sixty (60) days before the due date. In turn, Debtor is to pay its

---

1. First Pennsylvania changed its name to Second Pennsylvania Real Estate Corporation.

2. Debtor's testimony and that of Lessor are not identical regarding the square footage leased, used and sublet by Debtor. The differences are not material for purposes of this opinion. We use Debtor's figures.

3. Debtor makes utility and other payments for all tenants and receives their proportionate shares from Lessor, which collects it from the other tenants and "passes it through" to Debtor.

proportionate share to Lessor not later than thirty (30) days before the due date of any tax. Despite those provisions, Debtor paid all of the applicable real estate taxes directly to the taxing bodies, including that to the Fox Chapel School District which is in issue. In turn, Lessor collected from the other tenants their proportionate share and remitted same back to Debtor at or before the annual reconciliation.[4]

## I.

The first issue is whether Debtor, which has not yet rejected the lease, is obligated to pay the full April rent required under the lease, as suggested by Lessor, or is required to pay only a reasonable rental value for the portion of the property which it occupies. Debtor is in actual possession of an office building in the complex which contains approximately 35,000 square feet and of an additional 8,148 square feet of warehouse space. Debtor's subtenant occupies 196,000 square feet. It is not clear from the testimony whether any entity, including Debtor, actually occupies the remainder which Debtor leases but does not sublet. At least 239,158 of the 292,440 square feet leased by Debtor is occupied.

■ There are two lines of cases covering this subject. The first applies § 503(b)(1)(A) and requires the administrative claimant to establish that the obligations incurred by the Debtor were reasonable rent or were actual and necessary expenses to preserve the estate. *Great Western Savings Bank v. Orvco, Inc.*, 95 B.R. 724 (9th Cir. BAP 1989) (distinguishable in that case dealt with a lease which had been deemed rejected); *In re Tammey Jewels, Inc.*, 116 B.R. 292 (Bankr.M.D.Fla. 1990) (distinguishable in that debtor never took possession of leased space). The other represents the greater weight of authority. These cases rely upon the language of § 365(d)(3) which requires a trustee to perform timely all of the obligations of a debt-

or concerning payments of rents in the initial sixty (60) days postpetition including, when lessor files a motion demanding same, full payment. *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415, 416 (D.Mass.1987) (collecting cases); *In re Gillis*, 92 B.R. 461, 465 (Bankr.D.Haw.1988). *See also In re U.S. Fax, Inc.*, 114 B.R. 70, 73–74 (E.D.Pa.1990); *In re Damianopoulos*, 93 B.R. 3, 8 (Bankr.N.D.N.Y.1988); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 972 (Bankr.E.D.Pa. 1987). In the case at hand, we find that Debtor is obligated to pay the contract rate of rents during any of the first sixty (60) days postpetition in which it has possession of the premises and has not rejected the lease, including the month of April, 1991.

■ Section 365(d)(3) was added to the Code as the result of a strong commercial landlord's lobby to protect the lessor from providing current services without the ability to collect rents or to regain possession of its property. On that basis alone, Debtor would be responsible for the rent as provided in the lease, but there are other facts which support this conclusion. Debtor owned and occupied the property before the sale to First Pennsylvania. Debtor occupies or has sublet approximately one-third (⅓) of the total premises and has possession of the entire office building. Lessor is unable to rerent the premises while Debtor remains. Debtor receives and keeps the rent from its subtenant. Debtor is operating and recently filed motions to assume certain executory contracts with its key personnel. Obviously, the Debtor needs a location from which to conduct its business and has no other space available until it can take occupancy under its new lease, on or after May 1, 1991. Debtor brought forth no evidence to substantiate that rent for its business premises is not an actual and necessary expense to preserve the estate pending rejection of the lease and Debtor's move to new head-

---

**4.** There were a few exceptions to the method by which rents, utilities, and taxes were paid and/or collected. The exceptions were based

upon certain lease provisions for tenants who were in occupancy prior to the sale to First

quarters.[5]  In the absence of such evidence, the Court determines that Debtor is obligated to pay the April rent according to the lease.

■ Once the lease is rejected, however, the landlord must establish its administrative claim, if any, pursuant to § 503(b)(1). *In re Orvco,* 95 B.R. 724, 727 (9th Cir. BAP 1989); *In re Patella,* 102 B.R. 223, 226 (Bankr.D.N.Mex.1989).  The specific rent provided in the lease may or may not be the reasonable rental value upon which the landlord will be entitled to post-rejection payments. *In re Chandel Enterprises,* 64 B.R. 607, 610 (Bankr.C.D.Cal.1986).  That issue is for another day.

## II.

■ Next, the Court must consider Debtor's claim that it is entitled to offset some prepetition prepayments which Debtor made under the lease.  Debtor contends that the Court is bound to follow § 558 in this regard rather than § 553 which, Debtor claims, is limited to creditors who want to offset against the Debtor a mutual prepetition debt.  Debtor asserts that § 558 provides to the estate any defense available to the debtor, including personal defenses. Further, Debtor argues that even if a setoff theory were determined to be improper because the payments sought to be set off occurred prepetition whereas the rent obligation arose postpetition, it is entitled to recoup the prepetition payments because they arose out of the same transaction, to-wit, the lease.  The parties, and some of the cases they rely upon, use the terms "setoff" and "recoupment" interchangeably as applied to an estate's claim to credits against rents it owes and we follow that practice.

The Court agrees with Debtor's suggestion that § 558 governs this situation rather than § 553.  Section 558 specifically preserves to the trustee, in this case, to the Debtor-in-Possession, any defenses that the Debtor has to a claim. *In re Standard Furniture Co.,* 3 B.R. 527 (Bankr.S.D.Cal. 1980).[6]  Debtor's interpretation is in accord with *Matter of McGuire,* 11 B.R. 649 (Bankr.W.D.Pa.1981) (setoff claimed by creditor distinguished from setoff claimed on behalf of the estate).

Lessor argues that Debtor has no claim to setoff because there is no mutuality of parties and because setoff is inappropriate where prepetition payments would reduce postpetition rent.  However, *In re Standard Furniture Co.,* 3 B.R. 527 (Bankr.S. D.Cal.1980), dealt with essentially the same issue and permitted the setoff.  In that case, the original lessee deposited $5,000.00 as security prepetition.  The lease was assigned to the debtor.  Postpetition, the Chapter 7 trustee of the debtor was permitted to offset the estate's postpetition rent obligation (i.e., landlord's claim) against the prepetition security deposit.  The court determined that § 553 did not affect the trustee's claim of offset because by its terms that section is limited to the setoff right of a creditor.  Rather, the operative section was § 541(e), the predecessor to § 558, which permitted the trustee to assert the offset as a defense to the administrative rent claim. *See also Tavormina v. Alexander Grant & Co.,* 6 B.R. 71 (Bankr. S.D.Fla.1980) (trustee permitted to set off lessor's postpetition claim against debtor's prepetition claim). *Cf. In re Jarvis Kitchenware of D.C., Inc.,* 13 B.R. 230, 232 (Bankr.D.C.1981) (although trustee could not offset because prepetition defaults exceeded the security deposit, the court noted that a trustee may set off postpetition rent owed against prepetition claim to the extent that debtor was not in monetary default prepetition).

---

Pennsylvania.  They are not contested, nor are they material to the pending dispute.

**5.** Some courts presume that the lease rate is the reasonable rental value of the premises unless an opposing party produces evidence to the contrary. *See In re Gillis,* 92 B.R. 461, 465 (Bankr. D.Haw.1988); *In re Rare Coin Galleries of America, Inc.,* 72 B.R. 415, 417 (D.Mass.1987).  No

evidence was produced by any party concerning the reasonable rental value of the subject premises.

**6.** *Standard Furniture* dealt with former § 541(e) of the Code.  The 1984 Amendments to the Code replaced § 541(e) with current § 558 without change.

Lessor contends that the cases relied upon by Debtor in support of its § 558 argument are inapposite because they ignore the distinction between a debtor and a debtor-in-possession. The Court of Appeals for the Third Circuit recognizes that a debtor-in-possession is "a new entity, separate and apart from the prebankruptcy company...." *In re Bildisco*, 682 F.2d 72, 78–9 (3d Cir.1982), *aff'd*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). *Cf. Matter of West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir.1988) (debtor and debtor-in-possession are "closely related ..." and "materially distinct entities."). In a § 558 context, the distinction is of no significance because the very purpose of § 558 is to preserve for the estate the benefit of any defense "available to the debtor as against an entity other than the estate...." 11 U.S.C. § 558. The estate has the benefit of such a defense even if Debtor, after the commencement of the case, waives it. The waiver is not binding upon the estate. *Id.*

Here, but for the bankruptcy, Debtor would have had a claim against Lessor for prepaid rents. Following the filing of the bankruptcy, Debtor has the same defense available to Lessor's claim even if the appropriate name given to that defense is "recoupment" [7] rather than "setoff".

Because § 558 preserves for the estate the benefit of any personal defense available to the Debtor, the lack of mutuality argument must fail. 4 COLLIER ON BANKRUPTCY, ¶ 558.02 (15th ed. 1990) (to defeat improper claims against the estate, debtor-in-possession must be able to assert all defenses that debtor could have asserted had bankruptcy not intervened). *See In re M.W. Ettinger Transfer Co.*, 1988 WL 129334 (Bankr.D.Minn.1988) (unpublished) (refusing to follow *In re Braniff Airways, Inc.*, 42 B.R. 443 (Bankr.N.D.Tex.1984) in that *Braniff* failed to consider the impact of § 558, stating "[m]oreover, even under the *Braniff Airways* analysis, [prepetition-postpetition] crossover would be allowed in a case where justice would require it," and concluding that "the doctrine of mutuality

of parties does not foreclose debtor from offsetting its claim to prepaid rent against current rents accruing.").

### III.

■ Having determined that Debtor is entitled to deduct its prepetition prepaid rents from its postpetition rental obligation, the Court must decide (a) whether the Committee's suggestion for a sixty-day (60) deferral of the payment is appropriate and (b) how much of an offset Debtor may make. With respect to the deferral, the Committee asserts that general unsecured creditors will suffer irreparable harm if the Debtor is required to pay administrative rent prior to the rejection of the lease. However, the Court has determined that the Debtor's use of the leased facility constitutes an actual and necessary expense of the estate. Thus, the administrative rent is entitled to priority over and above the general unsecured creditors. There is no point to be served by requiring the Debtor to accrue administrative priority expenses. *See In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bankr.E.D. Pa.1987) (collecting cases which state that the postpetition, pre-rejection right of landlords to sixty (60) days' rent at the contract rate is a basis upon which to order immediate payment of that sum absent good cause for withholding). *See also* Local Rule Bankruptcy Procedure 2015.1 (requiring, *inter alia*, the payment when due of postpetition rents on real estate). The timing of payment of ordinary administrative claims is within the court's discretion. *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415 at 417. Here, no good cause to withhold payment has been shown to exist. To the contrary, Debtor filed a plan of reorganization which contains a provision to pay all administrative expenses in full in cash. *See* Article IV, § 4.1 of the Debtor's Plan of Reorganization, Docket Entry No. 3. Debtor also asserted at the preliminary hearing on this matter that it has the cash available to pay administrative expenses as

---

**7.** As to recoupment, the prepetition-postpetition time difference is irrelevant. There is no dispute between the parties concerning the fact that the claimed prepayments arose from the same transaction.

they come due. Moreover, Lessor contends that its mortgage on the property is in jeopardy because without the rent payments it cannot meet its mortgage obligation. If any entity were to suffer prejudice as a result of the nonpayment, it would be the Lessor. Thus, to the extent that the prepetition prepaid rents, utility payments, and taxes do not exceed the April rental obligation, the Debtor shall pay the difference forthwith to Lessor.[8]

## IV.

■ We turn now to what, if any, amount Debtor owes Lessor on the administrative rent claim. Debtor contends that it is entitled to a credit for prepaid tax deposits in the amount of $52,204.43, pass through insurance and broker commissions of $4,737.30, prepaid utilities of $70,426.11 and interest as of March 1, 1991, in the amount of $26,229.60 which is owed to Debtor by Lessor on the promissory note. The Court agrees that the promissory note interest which has not yet been paid to Debtor is an appropriate offset and will allow it.

Concerning the insurance and broker commissions, Debtor testified that it has paid all but $480.00, or $4,257.30, to date. The Court agrees that the setoff is appropriate but only to the extent Debtor has paid it. Therefore the $4,257.30 will be allowed as a credit against the April rent due.

Likewise, with respect to the utilities, Debtor acknowledged that it has paid only $37,871.61. The remaining sums represent prepetition, unsecured claims which Debtor cannot pay pending confirmation of a plan. Although Debtor may have to pay these charges through a plan, it is also possible that in the interim the utility companies will be paid by tenants in the building or by the landlord. These utility charges are, in large measure, other "pass through" items which Debtor pays in advance for all tenants in the building and which Lessor re-bates to Debtor pursuant to the terms of the lease. Therefore, to allow Debtor to decrease its postpetition rent by a sum of money for which a claim may be filed against it but which it ultimately may not owe would be inequitable and speculative. Of the $70,426.11 that Debtor claims as a credit for prepaid utilities, $37,871.61 will be allowed.

■ The final offset claim concerns the alleged prepaid tax deposits made by Debtor. Debtor contends it is entitled to a credit based on the fiscal year of the taxing body involved which is the Fox Chapel Area School District. Lessor contends that the parties have established a practice of settling accounts on a calendar year basis and, therefore, Debtor is not entitled to claim credits on a fiscal year theory. The parties stipulated that the school district's fiscal year runs from July 1 through June 30. Debtor counters that the issue was never relevant before and therefore the custom between the parties should not be determinative of the issue of tax proration.

The evidence established that the Fox Chapel School District bills real property owners in July or August and that the billing period runs from July 1 through the following June. The evidence also established that Debtor paid the most recent Fox Chapel School District taxes in full. From a strictly economic point of view, the Court would be inclined to say that Debtor should have the benefit of a prepayment measured from the date of payment and based on the fiscal year within which the school district had the use of the money. However, in the case of *In re Wheeling Pittsburgh Steel Corporation*, 109 B.R. 689 (Bankr.W.D.Pa. 1990), Judge Bentz held that the method of tax proration is governed by contract. In the absence of a contract, local custom will dictate tax proration. Judge Bentz noted that in Allegheny County, the county in which the Fox Chapel School District is located, all real estate taxes are "deemed" to be based on a calendar year running from January 1 through December 31. In

---

8. This Opinion and Order does not affect Lessor's obligation to prove its § 503(b)(1) claim following Debtor's rejection. Debtor is not required to pay rejection damages as an administrative priority claim. 11 U.S.C. § 365(g)(1).

Moreover, in the event that other administrative claimants are not paid in full, Debtor has the right to seek disgorgement. *In re Dieckhaus,* 73 B.R. at 973.

*Wheeling Pittsburgh,* certain taxes which were billed on August 1, 1988, were deemed by custom to be for calendar year 1988 despite the taxing body's fiscal year or billing periods. In the pending case, the taxes were billed and paid in 1990 and, by local custom and the parties' practice, would be prorated for calendar year 1990. As a result, Debtor is entitled to make no offset for the taxes it paid. If any rebate is due by Lessor to Debtor, the annual reconciliation will account for it. As in *Wheeling Pittsburgh,* it is immaterial that the Debtor paid taxes for a period of time in which it may not be in possession of the property, i.e., after May 1, 1991. However, tax proration is not a matter of fairness or equity but has been established by custom to provide certainty and foreseeability in dividing expenses. Judge Bentz found that the certainty and foreseeability factors outweigh economic fairness or equity between buyer and seller: "Seller's good luck or bad luck at some remote earlier year should have no bearing on the proration of current costs." 109 B.R. at 692.

*Wheeling Pittsburgh* is not on all fours with the pending case inasmuch as the issue dealt with a tax proration on a sale of real estate. However, in this case the parties have established the practice of settling their mutual obligations at calendar year end. Either party had the option of holding to the lease terms prior to the bankruptcy. Neither did so. For that reason, the Court finds that the parties' practice and local custom must govern on this issue in accord with *Wheeling Pittsburgh.*

Concerning the local custom, Lessor presented testimony from Jeffrey Wagner, a closing officer with Commonwealth Land Title Insurance Company. Mr. Wagner's testimony was received on rebuttal subject to Debtor's objection as to relevance. Mr. Wagner identified the practice followed by closing officers in Allegheny County concerning the proration of taxes. His testimony, consistent with the stipulation of the parties accepted by Judge Bentz in *Wheeling Pittsburgh,* was that taxes are prorated on a calendar year when real estate sales close. Based upon the *Wheeling Pittsburgh* case, the Court finds the testi-

mony to be relevant. Federal Rules Evidence 401, 406. Moreover, it is cumulative to the testimony of Philip Beard, an attorney called as a witness by the Debtor, who testified that the local practice is to prorate taxes on a calendar year basis but who opined that that practice may be incorrect with respect to the Fox Chapel School District taxes because of its fiscal year billing policy.

The Debtor is entitled to credit $68,358.51 against the rental obligation it owed to Lessor on April 1, 1991. An appropriate Order will be entered.

## ORDER

And now, to-wit, this 30th day of April, 1991, for the reasons set forth in the foregoing Memorandum Opinion, it is ORDERED that Debtor shall pay forthwith to its Lessor, Second Pennsylvania Real Estate Corporation, the rents which were due on April 1, 1991, to the extent that they exceed $68,358.31.